**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| LONESTAR CRYSTAL DISPLAY LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> LG ELECTRONICS, INC. and <br> LG ELECTRONICS U.S.A., INC., <br><br> *Defendants*. | Civil Action No. 2:26-cv-00407 <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Lonestar Crystal Display LLC files this Complaint for Patent Infringement against Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively, "LG" or "Defendants"), alleging as follows:

## NATURE OF SUIT

1. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## THE PARTIES

2. Plaintiff Lonestar Crystal Display LLC ("Lonestar" or "Plaintiff") is a limited liability company duly formed under the laws of the State of Texas with a place of business at 5830 Granite Parkway, #100–247, Suite 247, Plano, Texas 75204.

3. Lonestar is the assignee and owns all rights, title, and interest in and to U.S. Patent No. 7,714,961; No. 7,973,864; No. 8,988,644; No. 9,146,435; No. 9,383,612; and No. 9,952,480 (collectively, the "Asserted Patents").

4. Defendant LG Electronics, Inc. ("LGE") is an entity organized under the laws of the Republic of Korea with a principal place of business at LG Twin Tower 128, Yeoui-daero,

Yeongdeungpo-gu, Seoul, Korea 07336, and may be served with process pursuant to the provisions of the Hague Convention.

5.      Defendant LG Electronics U.S.A., Inc. ("LGUSA") is a Delaware corporation. LGUSA is registered to do business in the State of Texas, maintains physical facilities within this District at 2153 Eagle Parkway, Fort Worth, Texas 76177 and 14901 Beach Street, Fort Worth, Texas 76177, and may be served with process through its registered agent in the State of Texas, United States Corporation Co., 211 East 7th Street, Suite 620, Austin, Texas 78701.

6.      On information and belief, LGUSA is a wholly owned subsidiary of LGE.

**JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

**I.      LGE**

8.      LGE is subject to specific and general personal jurisdiction in this Court. This Court has personal jurisdiction over LGE because, on information and belief, LGE has engaged in continuous, systematic, and substantial activities within the State of Texas. Furthermore, on information and belief, this Court has personal jurisdiction over LGE because Lonestar's claims of patent infringement arise out of or relate to LGE's acts of patent infringement within and directed to this District.

9.      On information and belief, LGE, directly and/or through subsidiaries, agents, representatives, or intermediaries—including LGUSA—has conducted, and does conduct, substantial business in this District, including but not limited to: (i) at least a portion of the acts of infringement herein alleged; (ii) purposefully and voluntarily placing one or more infringing products and services into the stream of commerce with the expectation that they will be purchased

by consumers in this District; and/or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in the State of Texas and in this District. Thus, LGE is subject to this Court's specific and general personal jurisdiction pursuant to the Due Process Clause and the Texas Long-Arm Statute.

10.     On information and belief, LGE designs, develops, manufactures, supplies, and/or directs the manufacture and commercialization of the Accused Products. LGE purposefully places Accused Products into the stream of commerce with the expectation and/or intent that they will be purchased throughout the United States, including in Texas and in this District.

11.     LGE has knowledge that the Accused Products are distributed, marketed, offered for sale, and sold throughout the United States through an established distribution network that includes LGUSA and other distributors. LGE derives substantial revenue from the sale of the Accused Products in the United States, including in Texas and in this District.

12.     On information and belief, LGUSA is wholly owned and controlled by LGE, which directs, authorizes, and/or ratifies LGUSA's activities relating to the importation, distribution, marketing, and sale of the Accused Products in the United States, including in this District.

13.     On information and belief, LGUSA operates as LGE's agent and/or alter ego with respect to the distribution, marketing, and sale of the Accused Products in the United States. LGE and LGUSA operate in an integrated manner with coordinated product development, branding, marketing, sales, and distribution strategies. LGE exercises control over LGUSA's activities and benefits financially from LGUSA's infringing activities in this District.

14.     On information and belief, LGE has purposefully directed activities toward this District by, among other things, designing and supplying Accused Products intended for

distribution in this District, coordinating with distribution channels that deliver Accused Products into this District, and providing technical, marketing, and commercial support directed to customers in the United States, including in the State of Texas.

15.　Lonestar's claims arise out of or relate to LGE's activities directed toward the State of Texas and this District, including LGE's design, manufacture, supply, and commercialization of Accused Products that are distributed, offered for sale, and/or sold in this District.

16.　In addition, or in the alternative, LGE is subject to this Court's personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2), as the claims herein alleged arise under federal law and the exercise of jurisdiction is consistent with the United States Constitution and laws.

17.　The exercise of personal jurisdiction over LGE would not offend traditional notions of fair play and substantial justice.

18.　LGE has previously acknowledged that this Court has personal jurisdiction over it. *See, e.g.*, *Advanced Coding Techs. LLC v. LG Elecs. Inc. and LG Elecs. U.S.A., Inc.*, No. 2:22-cv-00501-JRG, Dkt. No. 16 (E.D. Tex. Apr. 27, 2023) ("LG[E] admits that this Court has personal jurisdiction over LG[E]."). Furthermore, LGE has previously availed itself of this Court by bringing its own patent infringement claims. *See, e.g.*, *LG Elecs. Inc. v. TCL Elecs. Holdings Ltd.*, No. 2:22-cv-00122-JRG, Dkt. No. 1 (E.D. Tex. Apr. 21, 2022). Accordingly, the exercise of personal jurisdiction over LGE is reasonable and fair because LGE intentionally exploits the United States market, including the markets in Texas and this District, derives substantial economic benefit from sales of the Accused Products nationwide, including in Texas and this District, and can reasonably expect to be brought into court in this District where its products are distributed, offered for sale, and/or sold.

19.     Venue is proper under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) for LGE, a Korean company, because venue is proper in any judicial district against a foreign entity.

## II.     LGUSA

20.     LGUSA is subject to specific and general personal jurisdiction in this Court. This Court has personal jurisdiction over LGUSA because, on information and belief, LGUSA has engaged in continuous, systematic, and substantial activities within the State of Texas. Furthermore, on information and belief, this Court has personal jurisdiction over LGUSA because Lonestar's claims of patent infringement arise out of or relate to LGUSA's acts of patent infringement within and directed to this District.

21.     On information and belief, LGUSA, directly and/or through parents, subsidiaries, agents, representatives, or intermediaries—including LGE—has conducted, and does conduct, substantial business in this District, including but not limited to: (i) at least a portion of the acts of infringement herein alleged; (ii) purposefully and voluntarily placing one or more infringing products and services into the stream of commerce with the expectation that they will be purchased by consumers in this District; and/or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in the State of Texas and in this District. Thus, LGUSA is subject to this Court's specific and general personal jurisdiction pursuant to the Due Process Clause and the Texas Long-Arm Statute.

22.     On information and belief, LGUSA engages in wide-ranging promotional activities for LCD display devices, including the Accused Products, throughout Texas and in this District, including television, print, online, and direct-mail advertisements. For example, LGUSA offers to sell and/or sells infringing products directly to customers in the United States, including in this

District, through its official online marketplace, www.lg.com/us, which allows consumers, businesses, and other end users throughout the United States and this District to purchase infringing products, including the Accused Products.

23. On information and belief, LGUSA has substantial connections to the State of Texas, including within this District. For example, LGUSA has regular and established places of business in this District at 2153 Eagle Parkway, Fort Worth, Texas 76177 and at 14901 Beach Street, Fort Worth, Texas 76177.

24. LGUSA's Beach Street location is a distribution center, warehouse, logistics facility, and/or other physical place of business in this District. This facility is a regular and established place of business from which LGUSA stores, distributes, ships, and supports the sale of the Accused Products.

25. LGUSA, directly and/or through intermediaries, imports, distributes, markets, offers for sale, sells, and supports the Accused Products throughout the United States, including within Texas and this District. On information and belief, Accused Products are shipped to customers and retailers located in this District from or through LGUSA's distribution facilities located in this District, including from LGUSA's Beach Street facility.

26. LGUSA has purposefully directed its commercial activities toward Texas and this District by, among other things, maintaining distribution operations here, supplying Accused Products to customers throughout the State of Texas and in this District, and deriving substantial revenue from the sale of Accused Products throughout the State of Texas and in this District.

27. Lonestar's claims arise out of or relate to LGUSA's acts of infringement in this District, including LGUSA's importation, offering for sale, and sale of the Accused Products.

28.    Personal jurisdiction over LGUSA in this action comports with the Due Process Clause such that exercise of personal jurisdiction over LGUSA would not offend traditional notions of fair play and substantial justice. For example, LGUSA has conducted and regularly conducts business within this District. Indeed, LGUSA has admitted it conducts business in this District: "LG[]US[A] admits that it conducts business in the Eastern District of Texas." *Advanced Coding Techs. LLC v. LG Elecs. Inc. and LG Elecs. U.S.A., Inc.*, No. 2:22-cv-00501-JRG, Dkt. No. 16 (E.D. Tex. Apr. 27, 2023). LGUSA has purposefully availed itself of the privileges of conducting business within this District, and LGUSA has sought protection and benefit from the laws of the State of Texas by placing infringing products into the stream of commerce through an established distribution channel with awareness and/or intent that they will be purchased by consumers in this District. Having purposefully availed itself of the privilege of conducting business within this District, LGUSA should reasonably and fairly anticipate being brought into court here.

29.    Accordingly, LGUSA has repeatedly acknowledged or not contested that this Court has personal jurisdiction over it in recent patent infringement actions brought against it in this District. *See, e.g.*, *Advanced Coding Techs. LLC v. LG Elecs. Inc. and LG Elecs. U.S.A., Inc.*, No. 2:22-cv-00501-JRG, Dkt. No. 16 (E.D. Tex. Apr. 27, 2023) ("LG[USA] admits that this Court has personal jurisdiction over LG[USA]."); *Sovereign Peak Ventures, LLC v. LG Elecs., Inc. and LG Elecs. U.S.A., Inc.*, No. 2:20-cv-00107-JRG, Dkt. No. 14 (E.D. Tex. Aug. 5, 2020) ("LG USA does not contest personal jurisdiction in this lawsuit."); *WFR IP LLC v. LG Elecs., Inc. and LG Elecs. U.S.A., Inc.*, No. 2:22-cv-00245-RWS-RSP, Dkt. No. 16 (E.D. Tex. Nov. 23, 2022) ("LG[] does not contest that the Court has personal jurisdiction over . . . LG[USA] for the purposes of this particular action only.").

30.    Venue is proper against LGUSA under 28 U.S.C. § 1400(b) because it has maintained regular and established physical places of business in this District and has committed acts of patent infringement in this District.

31.    Denton County property tax records reflect that LGUSA owns property at 14901 Beach Street, Fort Worth, Texas 76177.[1]

32.    Denton County property tax records further reflect that LGUSA owns property at 2153 Eagle Parkway, Fort Worth, Texas 76177.[2]



*(LGUSA's Facility at 2153 Eagle Parkway, Fort Worth, Texas)*

33.    As shown in the photograph above, an LG flag flies in front of LGUSA's facility at 2153 Eagle Parkway.

---

[1] https://taxweb.dentoncounty.gov/Accounts/AccountDetails?TaxAccountNumber=657779DEN.
[2] https://taxweb.dentoncounty.gov/Accounts/AccountDetails?taxAccountNumber=970177DEN.

34.     LGUSA's Fort Worth offices are physical locations in this District from which LGUSA carries out its business.

35.     LG's regular and ongoing presence in this District is further demonstrated by LG locating its first factory for producing EV charging stations at 2153 Eagle Parkway in Fort Worth. This new plant "builds on LG's longtime presence as a corporate citizen in Fort Worth, where its million-square-foot distribution center for consumer electronics and home appliances has been located for three decades."[3]

36.     On information and belief, LGUSA employees in this District, including from LGUSA's offices in Fort Worth, design, develop, market, sell, and/or support infringing products, including the Accused Products.

**ASSERTED PATENTS**

**I.      THE '961 PATENT**

37.     United States Patent No. 7,714,961 (the "'961 Patent") is entitled "Display Panel and Method of Manufacturing the Same." The United States Patent and Trademark Office duly and legally issued the '961 Patent on May 11, 2010, from U.S. Patent Application No. 12/045,232, filed on March 10, 2008.

38.     The '961 Patent claims priority to Korean Patent Application No. 2007-43328, filed on May 4, 2007.

39.     Lonestar is the current owner of all rights, title, and interest in and to the '961 Patent, including the right to sue for past damages.

---

[3]     https://www.lg.com/us/press-release/lg-opens-first-us-factory-to-produce-advanced-ev-chargers.

40.    A true and correct copy of the '961 Patent is attached as **Exhibit A** and is incorporated by reference.

41.    The '961 Patent generally relates to a display panel that is capable of preventing moisture from penetrating a space between a first substrate and a second substrate, thereby enhancing display quality.

42.    The '961 Patent solves a technological problem related to moisture penetrating between the first and second substrates of a display panel, which can cause the display quality of an LCD apparatus to deteriorate. As the '961 Patent explains, an LCD panel typically includes a first substrate, a second substrate, a liquid crystal layer, and a seal line. The first substrate includes a plurality of pixels and is electrically connected to a printed circuit board through a flexible printed circuit board. The second substrate faces the first substrate, and the liquid crystal layer is disposed between the first substrate and the second substrate. The seal line is also disposed between the first substrate and the second substrate to seal the liquid crystal.

43.    A gate circuit film is electrically connected to a gate pad typically formed at a left lateral end portion of the first substrate. A data circuit film is electrically connected to a data pad typically formed at an upper lateral end portion of the first substrate, and a panel naming mark for indicating characteristics and records of the first substrate is generally formed at the left lateral end portion of the first substrate. As the '961 Patent explains, since the gate pad and the panel naming mark are formed at the left lateral end portion of the first substrate and the data pad is formed at the upper lateral end portion of the first substrate, the second substrate is physically smaller than the first substrate. As such, a left lateral end portion and the upper lateral end portion of the first substrate are exposed, e.g., not covered by the second substrate. Therefore, moisture may condense and form water droplets on the left lateral end portion and the upper lateral end portion of the first

substrate. The water droplets may spread on the left lateral end portion and the upper lateral end portion of the first substrate and thereby penetrate into a space between the first substrate and the second substrate, causing a display quality of the LCD device to deteriorate.

44.     Accordingly, the '961 Patent recognized a need for a display panel capable of preventing moisture from penetrating the space between the first substrate and the second substrate. The patent thus provides solutions, including display panels and methods of manufacturing display panels, relating to enhancing display quality by preventing or substantially reducing moisture from entering the space between the first and second substrates.

45.     Defendants are not licensed to the '961 Patent and were not licensed during the six years preceding this lawsuit.

## II.     THE '864 PATENT

46.     United States Patent No. 7,973,864 (the "'864 Patent") is entitled "Liquid Crystal Display." The United States Patent and Trademark Office duly and legally issued the '864 Patent on July 5, 2011, from U.S. Patent Application No. 12/016,648, filed on January 18, 2008.

47.     The '864 Patent claims priority to Korean Patent Application No. 10-2007-0043101, filed on May 3, 2007.

48.     Lonestar is the current owner of all rights, title, and interest in and to the '864 Patent, including the right to sue for past damages.

49.     A true and correct copy of the '864 Patent is attached as **Exhibit B** and is incorporated by reference.

50.     The '864 Patent generally relates to an LCD that may prevent the generation of an afterimage and improve lateral visibility by preventing a delay of an electric discharge of pixels.

51.     The '864 Patent solves a technological problem relating to afterimages generated in a vertical alignment (VA) mode LCD. The '864 Patent explains that among LCDs, a VA mode LCD, which aligns LC molecules such that the long axes thereof are perpendicular to the panels in the absence of an electric field, is spotlighted because of its high contrast ratio and wide viewing angle.

52.     As explained in the '864 Patent, the VA mode LCD can have poor lateral visibility as compared with front visibility. To improve the lateral visibility of the VA mode LCD, one pixel may be divided into two sub-pixels, with different voltages applied to each sub-pixel. One sub-pixel receives a higher voltage through a switching element, while the other sub-pixel is coupled through a coupling capacitor so that it receives a lower voltage. When connecting two sub-pixels with a coupling capacitor, however, the pixels discharge more slowly, thereby generating afterimages.

53.     Accordingly, the '864 Patent recognized a need for a display panel that prevents the generation of an afterimage and improves lateral visibility by preventing a delay of an electric discharge of pixels. The patent thus provides solutions, including liquid crystal displays and methods of manufacturing liquid crystal displays, relating to reducing or preventing afterimages and improving lateral visibility of liquid crystal displays.

54.     Defendants are not licensed to the '864 Patent and were not licensed during the six years preceding this lawsuit.

## III.    THE '644 PATENT

55.     United States Patent No. 8,988,644 (the "'644 Patent") is entitled "Liquid Crystal Display." The United States Patent and Trademark Office duly and legally issued the '644 Patent on March 24, 2015, from U.S. Patent Application No. 13/829,801, filed on March 14, 2013.

56.     The '644 Patent claims priority to Korean Patent Application No. 10-2012-0047146, filed on May 3, 2012.

57.     Lonestar is the current owner of all rights, title, and interest in and to the '644 Patent, including the right to sue for past damages.

58.     A true and correct copy of the '644 Patent is attached as **Exhibit C** and is incorporated by reference.

59.     The '644 Patent generally relates to a common voltage distribution network scheme for reducing the cost of a data line driver in a liquid crystal display.

60.     The '644 Patent solves a technological problem relating to reducing the number of data lines connected to a data line driver circuit of an LCD panel. As the '644 Patent explains, in one class of embodiments, at least one of a gate line driver and a data line driver of a liquid crystal display is directly included in or directly mounted to a display panel, for example in the form of a plurality of IC chips mounted on the panel, or is mounted to a flexible circuit film which is then attached to the display panel.

61.     The data line driver can constitute a large portion of the manufacturing cost of the liquid crystal display. More particularly, as the number of data lines applying respective data voltages to corresponding columns of pixels is increased, the cost of the driver circuitry of the liquid crystal display is disadvantageously increased.

62.     Accordingly, the '644 Patent discloses a system that, among other things, can reduce the size and cost of the data line driver circuit of an LCD by reducing the number of required data lines.

63.     Defendants are not licensed to the '644 Patent and were not licensed during the six years preceding this lawsuit.

## IV.    THE '435 PATENT

64.    United States Patent No. 9,146,435 (the "'435 Patent") is entitled "Display Panel and Method of Manufacturing the Same." The United States Patent and Trademark Office duly and legally issued the '435 Patent on September 29, 2015, from U.S. Patent Application No. 14/142,401, filed on December 27, 2013.

65.    The '435 Patent claims priority to Korean Patent Application No. 10-2013-0093570, filed on August 7, 2013.

66.    Lonestar is the current owner of all rights, title, and interest in and to the '435 Patent, including the right to sue for past damages.

67.    A true and correct copy of the '435 Patent is attached as **Exhibit D** and is incorporated by reference.

68.    The '435 Patent generally relates to a display panel of a liquid crystal display apparatus and a method of manufacturing the display panel.

69.    The '435 Patent solves a technological problem related to improving an aperture ratio and transmittance of an LCD panel. The '435 Patent discloses, in exemplary embodiments, a display panel that includes a high storage line overlapping a high pixel electrode and a low storage line overlapping a low pixel electrode. In such embodiments, the high and low storage lines may not overlap first and second data lines, which may substantially improve the display quality of the LCD panel by effectively preventing a coupling capacitor at the boundary of the pixels. The high and low pixel electrodes may overlap the first and second data lines, such that the aperture ratio may be substantially improved. Furthermore, in some embodiments, the display panel includes a storage compensating line disposed at side portions or a peripheral area of the display panel, which may provide a stable storage voltage.

70.    Defendants are not licensed to the '435 Patent and were not licensed during the six years preceding this lawsuit.

## V.    THE '612 PATENT

71.    United States Patent No. 9,383,612 (the "'612 Patent") is entitled "Liquid Crystal Display Comprising First and Second Electrodes Wherein the Second Electrode Comprises a Plurality of Branch Electrodes Overlapping the First Electrode." The United States Patent and Trademark Office duly and legally issued the '612 Patent on July 5, 2016, from U.S. Patent Application No. 13/837,114, filed on March 15, 2013.

72.    The '612 Patent claims priority to Korean Patent Application No. 10-2012-0138216, filed on November 30, 2012.

73.    Lonestar is the current owner of all rights, title, and interest in and to the '612 Patent, including the right to sue for past damages.

74.    A true and correct copy of the '612 Patent is attached as **Exhibit E** and is incorporated by reference.

75.    The '612 Patent generally relates to a liquid crystal display that prevents a display defect, such as bruising, due to external pressure.

76.    The '612 Patent solves a technological problem relating to display defects, such as bruising, in liquid crystal display panels. As the '612 Patent explains, when pressure is applied to a display panel, the alignment of the liquid crystal molecules may be in a state of disorder. When the pressure is released, the liquid crystal molecules may not be restored to the original state, which influences the alignment of the adjacent liquid crystal molecules and, as a result, a display defect, such as a bruising, may occur.

77.     Accordingly, the '612 Patent provides solutions, including liquid crystal displays, that have the advantage of preventing a display defect, such as bruising, due to external pressure, in which the liquid crystal display includes a pixel electrode and a common electrode as two field generating electrodes formed on the same substrate.

78.     Defendants are not licensed to the '612 Patent and were not licensed during the six years preceding this lawsuit.

## VI.    THE '480 PATENT

79.     United States Patent No. 9,952,480 (the "'480 Patent") is entitled "Display Device." The United States Patent and Trademark Office duly and legally issued the '480 Patent on April 24, 2018, from U.S. Patent Application No. 15/400,170, filed on January 6, 2017.

80.     The '480 Patent claims priority to Korean Patent Application No. 10-2016-0041128, filed on April 4, 2016.

81.     Lonestar is the current owner of all rights, title, and interest in and to the '480 Patent, including the right to sue for past damages.

82.     A true and correct copy of the '480 Patent is attached as **Exhibit F** and is incorporated by reference.

83.     The '480 Patent generally relates to a display device having an improved aperture ratio.

84.     The '480 Patent solves a technological problem related to improving an aperture ratio of a display device. The '480 Patent discloses, in an exemplary embodiment, a display device including a first gate line and a data line intersecting each other, a pixel electrode, a switching element including a gate electrode connected to the first gate line, a source electrode connected to the data line, a drain electrode connected to the pixel electrode, and a connecting portion which

connects the drain electrode with the pixel electrode. A distance between the data line and the connecting portion is less than a distance between the data line and the gate electrode in a first direction perpendicular to the data line.

85.    Defendants are not licensed to the '480 Patent and were not licensed during the six years preceding this lawsuit.

## THE ACCUSED PRODUCTS

86.    On information and belief, LG designs, develops, makes, uses, offers to sell, and/or sells within the United States, and/or imports into the United States, liquid crystal display ("LCD") devices, including at least LCD monitors and televisions, such as the LG 27-inch QHD IPS monitor (Part No. 27U631A-B), the LG 55-inch UHD television (Part No. 55UA7700PUB), the LG 43-inch QNED television (Part No. 43QNED70AUA), and the LG 86-inch QNED television (Part No. 86QNED85TUA) and other substantially similar LCD devices that utilize the inventions of the Asserted Patents (collectively, the "Accused Products").

87.    LG has advertised, offered for sale, and sold—and continues to advertise, offer for sale, and sell—the Accused Products, at least through LG's website (https://www.lg.com), through the official LG Store on Amazon (https://www.amazon.com/stores/LGElectronics/page/E8585304-4D77-4965-9D22-B5F2CF409E38) and other online marketplaces, and through retail partners such as Best Buy, Staples, and Walmart.

88.    For example, LG offers for sale and sells at least some of the Accused Products directly to consumers in the United States, including in this District, via its official website:



*(https://www.lg.com/us/monitors/lg-27u631a-b-qhd-monitor)*



*(https://www.lg.com/us/tvs/lg-55ua7700pub-4k-uhd-tv)*

89.     As set forth in greater detail below, LG infringes one or more of the Asserted Patents under 35 U.S.C. §§ 271(a), (b), (c), and/or (g).

## COUNT I: INFRINGEMENT OF THE '961 PATENT

90.     Lonestar incorporates by reference the preceding paragraphs as though fully set forth herein.

91.     LG is and has been directly infringing one or more claims of the '961 Patent, including but not limited to at least Claim 18, either literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling within the United States, and/or by importing into the United States, without authority, at least one of the Accused Products.

92.     For example, exemplary Claim 18 of the '961 Patent is directed to:

18. A method of manufacturing a display panel having a display region and a peripheral region surrounding the display region, the method comprising:

forming a first mother substrate having a gate line extending along a first direction, a data line extending along a second direction substantially perpendicular to the first direction and crossing the first direction, a pixel portion formed in the display region and electrically connected to the gate line and the data line, and a gate driving part formed in the peripheral region and electrically connected to the gate line;

forming a second mother substrate having a light blocking layer facing the peripheral region;

forming a seal line on one of the first mother substrate and the second mother substrate, the seal line being formed in an area outside an outer peripheral edge of the display region, the area outside the outer peripheral edge of the display region being closer to an outer peripheral edge of the light blocking layer than to the outer peripheral edge of the display region;

depositing liquid crystal onto one of the first mother substrate and the second mother substrate;

combining the first mother substrate and the second mother substrate to confine the liquid crystal therebetween;

cutting a portion of the first mother substrate to form a first substrate having the gate line, the data line, the pixel portion and the gate driving part; and

cutting a portion of the second mother substrate such that a first end portion of the second substrate and an opposite second end portion of the second substrate coincide with a first end portion of the first substrate and an opposite second end portion of the first substrate, respectively.

93. The Accused Products, including at least the LG 43-inch QNED television (Part No. 43QNED70AUA), practice each element and/or are made according to at least, but not limited to, the method of Claim 18 of the '961 Patent.

94. The Accused Products perform and/or are made according to a method of manufacturing a display panel having a display region and a peripheral region surrounding the display region. For example, the LG 43-inch QNED television (Part No. 43QNED70AUA) includes an LCD panel with a display region and a peripheral region surrounding the display region.

95. The method of manufacturing the Accused Products includes forming a first mother substrate. For example, the LG 43-inch QNED television (Part No. 43QNED70AUA) includes a first mother substrate, such as a thin-film transistor ("TFT") substrate.

96. The first mother substrate in the Accused Products includes a gate line extending along a first direction, a data line extending along a second direction substantially perpendicular to the first direction and crossing the first direction, a pixel portion formed in the display region and electrically connected to the gate line and the data line, and a gate driving part formed in the peripheral region and electrically connected to the gate line. For example, the LG 43-inch QNED television (Part No. 43QNED70AUA) includes rectangular pixel regions, each with a gate line extending substantially parallel to a short side of the pixel region and a data line extending

substantially parallel to a long side of the pixel region, with both the gate line and the data line electrically connected to the pixel portion. The LG 43-inch QNED television (Part No. 43QNED70AUA) also includes a gate driving part formed in the peripheral region (e.g., at or near the outer edge of the LCD panel) that is electrically connected to the gate line.

97.     The method of manufacturing the Accused Products includes forming a second mother substrate with a light blocking layer facing the peripheral region. For example, the LG 43-inch QNED television (Part No. 43QNED70AUA) includes a second mother substrate, such as a color filter ("CF") substrate, with a light blocking layer facing the peripheral region of the LCD panel.

98.     The method of manufacturing the Accused Products includes forming a seal line on one of the first mother substrate and the second mother substrate, the seal line being formed in an area outside an outer peripheral edge of the display region, the area outside the outer peripheral edge of the display region being closer to an outer peripheral edge of the light blocking layer than to the outer peripheral edge of the display region. For example, the LG 43-inch QNED television (Part No. 43QNED70AUA) includes a seal line that is closer to an outer peripheral edge of the light blocking layer than to the outer peripheral edge of the display region.

99.     The method of manufacturing the Accused Products includes depositing liquid crystal onto one of the first mother substrate and the second mother substrate. For example, the LG 43-inch QNED television (Part No. 43QNED70AUA) includes an LCD panel made by depositing liquid crystal onto one of the first mother substrate and the second mother substrate.

100.     The method of manufacturing the Accused Products includes combining the first mother substrate and the second mother substrate to confine the liquid crystal therebetween. For

example, the LCD panel of the LG 43-inch QNED television (Part No. 43QNED70AUA) includes liquid crystal confined between the first mother substrate and the second mother substrate.

101. The method of manufacturing the Accused Products includes cutting a portion of the first mother substrate to form a first substrate having the gate line, the data line, the pixel portion and the gate driving portion. For example, the LG 43-inch QNED television (Part No. 43QNED70AUA) has a cut first mother substrate that includes the gate line, the data line, the pixel portion and the gate driving portion.

102. The method of manufacturing the Accused Products includes cutting a portion of the second mother substrate such that a first end portion of the second substrate and an opposite second end portion of the second substrate coincide with a first end portion of the first substrate and an opposite second end portion of the first substrate, respectively. For example, the LG 43-inch QNED television (Part No. 43QNED70AUA) has a cut second mother substrate such that a first end portion of the second substrate and an opposite second end portion of the second substrate coincide with a first end portion of the first substrate and an opposite second end portion of the first substrate.

103. LG has actual knowledge of the '961 Patent, and their infringement of the '961 Patent, at least as of the date of filing of this Complaint.

104. LG is and has been infringing one or more claims of the '961 Patent, including but not limited to at least Claim 18, by inducing third parties to infringe, including for example LG's retail partners, customers, and/or end users of the Accused Products, within this District and throughout the United States. For example, on information and belief, at least the LG 43-inch QNED television (Part No. 43QNED70AUA) has been and is being sold, offered for sale, and/or used by LG's retail partners, customers, and/or end users. Direct infringement by LG's retail

partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG 43-inch QNED television (Part No. 43QNED70AUA).

105.   On information and belief, LG supplies LCD monitors and televisions that are especially manufactured according to the inventions claimed in the '961 Patent, including but not limited to at least Claim 18, to induce third parties, including for example LG's retail partners, customers, and/or end users of the Accused Products, to use, offer for sale, and/or sell the Accused Products in a manner that would infringe one or more claims of the '961 Patent, including but not limited to at least Claim 18.

106.   On information and belief, LG markets, advertises, and lists sales information such as price, special offers, and inventory information for the Accused Products, including the LG 43-inch QNED television (Part No. 43QNED70AUA), on its website and elsewhere to induce third parties, including LG's retail partners, customers, and/or end users, to sell, offer to sell, and/or use the Accused Product in a manner that would infringe one or more claims of the '961 Patent, including but not limited to at least Claim 18. *See, e.g.*, https://www.lg.com/us/tvs/lg-43qned70aua-qned-4k-tv.

107.   On information and belief, LG furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Products, including at least the LG 43-inch QNED television (Part No. 43QNED70AUA), to induce third parties, including LG's retail partners, customers, and/or end users, to offer to sell, sell, and/or use the Accused Products in a manner that would infringe one or more claims of the '961 Patent, including but not limited to at least Claim 18. *See, e.g.*, https://www.lg.com/us/support/product/lg-43QNED70AUA.AUS.

108.   Despite LG's knowledge of the '961 Patent and LG's infringement of the '961 Patent, LG has continued to induce third parties, including LG's retail partners, customers, and/or

- 23 -

end users of the Accused Products, including the LG 43-inch QNED television (Part No. 43QNED70AUA), to infringe one or more claims of the '961 Patent, including but not limited to at least Claim 18, with the specific intent to cause infringement. LG knew or should have known that those acts would induce actual infringement by third parties, including LG's retail partners, customers, and/or end users, of one or more claims of the '961 Patent, including but not limited to at least Claim 18.

109.    LG has therefore induced infringement by others of one or more claims of the '961 Patent, including but not limited to at least Claim 18, with the specific intent to induce acts that constitute infringement of the '961 Patent and with knowledge that such acts infringe one or more claims of the '961 Patent, including but not limited to at least Claim 18.

110.    LG is and has been infringing one or more claims of the '961 Patent, including but not limited to at least Claim 18, by contributing to infringement by third parties, including for example LG's retail partners, customers, and/or end users of the Accused Products, including the LG 43-inch QNED television (Part No. 43QNED70AUA), within this District and throughout the United States. Direct infringement by LG's retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including at least the LG 43-inch QNED television (Part No. 43QNED70AUA). The LCD monitors and televisions supplied by LG are especially made or especially adapted to use the inventions claimed in the '961 Patent, including but not limited to at least Claim 18, and (i) are a material part of the inventions claimed in the '961 Patent and (ii) are not staple articles or commodities of commerce suitable for substantial non-infringing use at least because they are specifically designed to use the inventions claimed in the '961 Patent. Any other use of such LCD monitors and televisions would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

111.    LG has therefore contributed to the infringement by others of one or more claims of the '961 Patent, including but not limited to at least Claim 18.

112.    LG's infringement of one or more claims of the '961 Patent, including but not limited to at least Claim 18, has been, and continues to be, willful. As explained above, at least as of the filing of this Complaint, LG has actual knowledge of the '961 Patent and LG's infringement of the '961 Patent. Despite that knowledge, LG did not and has not ceased its infringing activities. LG has continued to infringe one or more claims of the '961 Patent, including but not limited to at least Claim 18, in disregard of Lonestar's patent rights. As a result, LG deliberately and intentionally infringed the '961 Patent, and continues to do so, after receiving express and actual knowledge of both the '961 Patent and its infringement thereof.

113.    LG's infringement of the '961 Patent, including but not limited to at least Claim 18, has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling Lonestar to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNT II: INFRINGEMENT OF THE '864 PATENT

114.    Lonestar incorporates by reference the preceding paragraphs as though fully set forth herein.

115.    LG is and has been directly infringing one or more claims of the '864 Patent, including but not limited to at least Claim 2, either literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling within the United States, and/or by importing into the United States, without authority, at least one of the Accused Products.

116.    For example, exemplary Claim 2 of the '864 Patent is directed to:

- 25 -

2. A liquid crystal display, comprising:

a substrate;

a first gate line and a second gate line disposed on the substrate adjacent each other;

a first data line and a second data line adjacent to each other and insulated from and crossing the first gate line and the second gate line;

a storage electrode line insulated from and crossing the first gate line and the second gate line;

a first thin film transistor comprising a control terminal connected to the first gate line and an input terminal connected to the first data line;

a second thin film transistor comprising a control terminal connected to the first gate line and an input terminal connected to the first data line;

a first sub-pixel electrode connected to the output terminal of the first thin film transistor;

a second sub-pixel electrode connected to the output terminal of the second thin film transistor;

a third thin film transistor comprising a control terminal connected to the second gate line and an input terminal connected to the first sub-pixel electrode; and

a first capacitive conductor connected to the output terminal of the third thin film transistor and overlapping a portion of the storage electrode line to form a first voltage reducing capacitor.

117.    The Accused Products, including at least the LG 86-inch QNED television (Part No. 86QNED85TUA), practice each element of at least, but not limited to, Claim 2 of the '864 Patent.

118. The Accused Products include a liquid crystal display. For example, the LG 86-inch QNED television (Part No. 86QNED85TUA) includes an 86-inch LCD.

119. The LCD in the Accused Products includes a substrate. For example, the LCD in the LG 86-inch QNED television (Part No. 86QNED85TUA) includes a substrate, such as a TFT substrate.

120. The LCD in the Accused Products includes a first gate line and a second gate line disposed on the substrate adjacent each other. For example, the LCD in the LG 86-inch QNED television (Part No. 86QNED85TUA) includes first and second adjacent gate lines disposed on the substrate.

121. The LCD in the Accused Products includes a first data line and a second data line adjacent to each other and insulated from and crossing the first gate line and the second gate line. For example, the LCD in the LG 86-inch QNED television (Part No. 86QNED85TUA) includes first and second adjacent data lines that are insulated from and cross the first and second gate lines.

122. The LCD in the Accused Products includes a storage electrode line insulated from and crossing the first gate line and the second gate line. For example, the LCD in the LG 86-inch QNED television (Part No. 86QNED85TUA) includes a storage electrode line that is insulated from and crosses the first and second gate lines.

123. The LCD in the Accused Products includes a first thin film transistor comprising a control terminal connected to the first gate line and an input terminal connected to the first data line. For example, the LCD in the LG 86-inch QNED television (Part No. 86QNED85TUA) includes a thin film transistor with a control terminal connected to the first gate line and an input terminal connected to the first data line.

124.    The LCD in the Accused Products includes a second thin film transistor comprising a control terminal connected to the first gate line and an input terminal connected to the first data line. For example, the LCD in the LG 86-inch QNED television (Part No. 86QNED85TUA) includes a second thin film transistor with a control terminal connected to the first gate line and an input terminal connected to the first data line.

125.    The LCD in the Accused Products includes a first sub-pixel electrode connected to the output terminal of the first thin film transistor. For example, the LCD in the LG 86-inch QNED television (Part No. 86QNED85TUA) includes a first sub-pixel electrode connected ot the output terminal of the first thin film transistor.

126.    The LCD in the Accused Products includes a second sub-pixel electrode connected to the output terminal of the second thin film transistor. For example, the LCD in the LG 86-inch QNED television (Part No. 86QNED85TUA) includes a second sub-pixel electrode connected to the output terminal of the second thin film transistor.

127.    The LCD in the Accused Products includes a third thin film transistor comprising a control terminal connected to the second gate line and an input terminal connected to the first sub-pixel electrode. For example, the LCD in the LG 86-inch QNED television (Part No. 86QNED85TUA) includes a third thin film transistor with a control terminal connected to the second gate line and an input terminal connected to the first sub-pixel electrode.

128.    The LCD in the Accused Products includes a first capacitive conductor connected to the output terminal of the third thin film transistor and overlapping a portion of the storage electrode line to form a first voltage reducing capacitor. For example, the LCD in the LG 86-inch QNED television (Part No. 86QNED85TUA) includes a first capacitive conductor connected to

the output terminal of the third thin film transistor that overlaps a portion of the storage electrode line to form a first voltage reducing capacitor.

129. LG has had actual knowledge of the '864 Patent, and their infringement of the '864 Patent, at least as of the date of filing of this Complaint.

130. LG is and has been infringing one or more claims of the '864 Patent, including but not limited to at least Claim 2, by inducing third parties to infringe, including for example LG's retail partners, customers, and/or end users of the Accused Products, within this District and throughout the United States. For example, on information and belief, at least the LG 86-inch QNED television (Part No. 86QNED85TUA) has been and is being sold, offered for sale, and/or used by LG's retail partners, customers, and/or end users. Direct infringement by LG's retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG 86-inch QNED television (Part No. 86QNED85TUA).

131. On information and belief, LG supplies LCD monitors and televisions that are especially made or especially adapted to practice the inventions claimed in the '864 Patent, including but not limited to at least Claim 2, to induce third parties, including for example LG's retail partners, customers, and/or end users of the Accused Products, to use, offer for sale, and/or sell the Accused Products in a manner that would infringe one or more claims of the '864 Patent, including but not limited to at least Claim 2.

132. On information and belief, LG markets, advertises, and lists sales information such as price, special offers, and inventory information for the Accused Products, including the LG 86-inch QNED television (Part No. 86QNED85TUA), on its website and elsewhere to induce third parties, including LG's retail partners, customers, and/or end users, to sell, offer to sell, and/or use the Accused Product in a manner that would infringe one or more claims of the '864 Patent,

- 29 -

including but not limited to at least Claim 2. *See, e.g.*, https://www.lg.com/us/tvs/lg-86qned85tua-qned-4k-tv.

133.    On information and belief, LG furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Products, including the LG 86-inch QNED television (Part No. 86QNED85TUA), to induce third parties, including LG's retail partners, customers, and/or end users, to offer to sell, sell, and/or use the Accused Products in a manner that would infringe one or more claims of the '864 Patent, including but not limited to at least Claim 2. *See, e.g.*, https://www.lg.com/us/support/product/lg-86QNED85TUA.AUS.

134.    Despite LG's knowledge of the '864 Patent and LG's infringement of the '864 Patent, LG has continued to induce third parties, including LG's retail partners, customers, and/or end users of the Accused Products, including the LG 86-inch QNED television (Part No. 86QNED85TUA), to infringe one or more claims of the '864 Patent, including but not limited to at least Claim 2, with the specific intent to cause infringement. LG knew or should have known that those acts would induce actual infringement by third parties, including LG's retail partners, customers, and/or end users, of one or more claims of the '864 Patent, including but not limited to at least Claim 2.

135.    LG has therefore induced infringement by others of one or more claims of the '864 Patent, including but not limited to at least Claim 2, with the specific intent to induce acts that constitute infringement of the '864 Patent and with knowledge that such acts infringe one or more claims of the '864 Patent, including but not limited to at least Claim 2.

136.    LG is and has been infringing one or more claims of the '864 Patent, including but not limited to at least Claim 2, by contributing to infringement by third parties, including for example LG's retail partners, customers, and/or end users of the Accused Products, including the

LG 86-inch QNED television (Part No. 86QNED85TUA), within this District and throughout the United States. Direct infringement by LG's retail partners, customers, and end uses occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG 86-inch QNED television (Part No. 86QNED85TUA). The LCD monitors and televisions supplied by LG are especially made or especially adapted to practice the inventions claimed in the '864 Patent, including but not limited to at least Claim 2, and (i) are a material part of the inventions claimed in the '864 Patent and (ii) are not staple articles or commodities of commerce suitable for substantial non-infringing use at least because they are specifically designed to use the inventions claimed in the '864 Patent. Any other use of such LCD monitors and televisions would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

137.    LG has therefore contributed to the infringement by others of one or more claims of the '864 Patent, including but not limited to at least Claim 2.

138.    LG's infringement of one or more claims of the '864 Patent, including but not limited to at least Claim 2, has been, and continues to be, willful. As explained above, at least as of the filing of this Complaint, LG has actual knowledge of the '864 Patent and LG's infringement of the '864 Patent. Despite that knowledge, LG did not and has not ceased its infringing activities. LG has continued to infringe one or more claims of the '864 Patent, including but not limited to at least Claim 2, in disregard of Lonestar's patent rights. As a result, LG deliberately and intentionally infringed the '864 Patent, and continues to do so, after receiving express and actual knowledge of both the '864 Patent and its infringement thereof.

139.    LG's infringement of the '864 Patent, including but not limited to at least Claim 2, has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling Lonestar to increased damages pursuant

to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNT III: INFRINGEMENT OF THE '644 PATENT

140. Lonestar incorporates by reference the preceding paragraphs as though fully set forth herein.

141. LG is and has been directly infringing one or more claims of the '644 Patent, including but not limited to at least Claim 1, either literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling within the United States, and/or by importing into the United States, without authority, at least one of the Accused Products.

142. For example, exemplary Claim 1 of the '644 Patent is directed to:

1. A liquid crystal display comprising:

a substrate;

a plurality of pixel electrodes disposed on the substrate and organized as a matrix having rows of pixel electrodes and columns of pixel electrodes;

a common electrode also disposed on the substrate to be in a spaced apart and electric field forming relation with the pixel electrodes;

a plurality of paired gate lines disposed on the substrate and extending substantially in a direction of the rows of pixel electrodes (pixel electrode rows) with each pair of gate lines respectively having an upper gate line extending adjacent to a top portion of a respective row of pixel electrodes (pixel electrodes row) and a lower gate line extending adjacent to a bottom portion of the respective pixel electrodes row;

a plurality of data lines disposed on the substrate and extending substantially in a direction of the columns of pixel electrodes (pixel electrode columns), the plurality of data lines including a first data line disposed at a left side of a corresponding pair of

neighboring first and second pixel electrode columns, wherein no data line is disposed between the corresponding pair of neighboring first and second pixel electrode columns; among the plurality of pixel electrodes and including a second data line disposed at a right side of the corresponding pair of neighboring first and second pixel electrode columns;

a plurality of paired first common voltage transmitting line portions disposed on the substrate and extending substantially in the direction of the rows with each pair of first common voltage transmitting line portions respectively having an upper first common voltage transmitting line portion extending adjacent to the top portion of the respective row of pixel electrodes (pixel electrodes row) and a lower first common voltage transmitting line portion extending adjacent to the bottom portion of the respective pixel electrodes row;

a plurality of second common voltage transmitting line portions disposed on the substrate and extending substantially in the direction of the columns, with each second common voltage transmitting line portion being disposed between the corresponding pair of neighboring first and second pixel electrode columns among the plurality of pixel electrodes and providing a column direction connection between an adjacent pair of the upper and lower first common voltage transmitting line portions,

wherein one of the pixel electrodes and the common electrode has a patterned cutouts shape and the other does not have a patterned cutouts shape.

143.    The Accused Products, including at least the LG 55-inch UHD television (Part No. 55UA7700PUB), practice each element of at least, but not limited to, Claim 1 of the '644 Patent.

144.    The Accused Products include a liquid crystal display. For example, the LG 55-inch UHD television (Part No. 55UA7700PUB) includes a 55-inch LCD.

145.    The LCD in the Accused Products includes a substrate. For example, the LCD in the LG 55-inch UHD television (Part No. 55UA7700PUB) includes a TFT substrate.

146.    The LCD in the Accused Products includes a plurality of pixel electrodes disposed on the substrate and organized as a matrix having rows of pixel electrodes and columns of pixel electrodes. For example, the LCD in the LG 55-inch UHD television (Part No. 55UA7700PUB) includes a matrix of pixel electrodes on the substrate with rows and columns of pixel electrodes.

147.    The LCD in the Accused Products includes a common electrode also disposed on the substrate to be in a spaced apart and electric field forming relation with the pixel electrodes. For example, the LCD in the LG 55-inch UHD television (Part No. 55UA7700PUB) includes a common electrode on the substrate that is in a spaced apart and electric field forming relation with the pixel electrodes.

148.    The LCD in the Accused Products includes a plurality of paired gate lines disposed on the substrate and extending substantially in a direction of the rows of pixel electrodes (pixel electrode rows) with each pair of gate lines respectively having an upper gate line extending adjacent to a top portion of a respective row of pixel electrodes (pixel electrodes row) and a lower gate line extending adjacent to a bottom portion of the respective pixel electrodes row. For example, the LCD in the LG 55-inch UHD television (Part No. 55UA7700PUB) includes paired gate lines on the substrate that extend substantially in the direction of the rows of pixel electrodes, with each pair of gate lines having an upper gate line extending adjacent to a top portion of a respective row of pixel electrodes and a lower gate line extending adjacent to a bottom portion of the respective row of pixel electrodes.

149.    The LCD in the Accused Products includes a plurality of data lines disposed on the substrate and extending substantially in a direction of the columns of pixel electrodes (pixel electrode columns), the plurality of data lines including a first data line disposed at a left side of a corresponding pair of neighboring first and second pixel electrode columns, wherein no data line

is disposed between the corresponding pair of neighboring first and second pixel electrode columns; among the plurality of pixel electrodes and including a second data line disposed at a right side of the corresponding pair of neighboring first and second pixel electrode columns. For example, the LCD in the LG 55-inch UHD television (Part No. 55UA7700PUB) includes data lines on the substrate that extend substantially in the direction of the columns of pixel electrodes that include a first data line on at a left side of a corresponding pair of neighboring first and second pixel electrode columns, wherein no data line is disposed between the corresponding pair of neighboring first and second pixel electrode columns; among the plurality of pixel electrodes and that include a second data line disposed on a right side of the corresponding pair of neighboring first and second pixel electrode columns.

150.    The LCD in the Accused Products includes a plurality of paired first common voltage transmitting line portions disposed on the substrate and extending substantially in the direction of the rows with each pair of first common voltage transmitting line portions respectively having an upper first common voltage transmitting line portion extending adjacent to the top portion of the respective row of pixel electrodes (pixel electrodes row) and a lower first common voltage transmitting line portion extending adjacent to the bottom portion of the respective pixel electrodes row. For example, the LCD in the LG 55-inch UHD television (Part No. 55UA7700PUB) includes paired first common voltage transmitting line portions on the substrate that extend substantially in the direction of the rows with each pair of first common voltage transmitting line portions respectively having an upper first common voltage transmitting line portion extending adjacent to the top portion of the respective row of pixel electrodes and a lower first common voltage transmitting line portion extending adjacent to the bottom portion of the respective row of pixel electrodes.

151. The LCD in the Accused Products includes a plurality of second common voltage transmitting line portions disposed on the substrate and extending substantially in the direction of the columns, with each second common voltage transmitting line portion being disposed between the corresponding pair of neighboring first and second pixel electrode columns among the plurality of pixel electrodes and providing a column direction connection between an adjacent pair of the upper and lower first common voltage transmitting line portions. For example, the LCD in the LG 55-inch UHD television (Part No. 55UA7700PUB) includes second common voltage transmitting line portions on the substrate that extend substantially in the direction of the columns, with each second common voltage transmitting line portion being disposed between the corresponding pair of neighboring first and second pixel electrode columns among the plurality of pixel electrodes and providing a column direction connection between an adjacent pair of the upper and lower first common voltage transmitting line portions.

152. One of the pixel electrodes and the common electrode of the LCD in the Accused Products has a patterned cutouts shape and the other does not have a patterned cutouts shape. For example, one of the pixel electrodes and the common electrode of the LCD in the LG 55-inch UHD television (Part No. 55UA7700PUB) has a patterned cutouts shape and the other does not have a patterned cutouts shape.

153. LG has had actual knowledge of the '644 Patent, and their infringement of the '644 Patent, at least as of the date of filing of this Complaint.

154. LG is and has been infringing one or more claims of the '644 Patent, including but not limited to at least Claim 1, by inducing third parties to infringe, including for example LG's retail partners, customers, and/or end users of the Accused Products, within this District and throughout the United States. For example, on information and belief, at least the LG 55-inch UHD

television (Part No. 55UA7700PUB) has been and is being sold, offered for sale, and/or used by LG's retail partners, customers, and/or end users. Direct infringement by LG's retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG 55-inch UHD television (Part No. 55UA7700PUB).

155.    On information and belief, LG supplies LCD monitors and televisions that are especially made or especially adapted to practice the inventions claimed in the '644 Patent, including but not limited to at least Claim 1, to induce third parties, including for example LG's retail partners, customers, and/or end users of the Accused Products, to use, offer for sale, and/or sell the Accused Products in a manner that would infringe one or more claims of the '644 Patent, including but not limited to at least Claim 1.

156.    On information and belief, LG markets, advertises, and lists sales information such as price, special offers, and inventory information for the Accused Products, including the LG 55-inch UHD television (Part No. 55UA7700PUB), on its website and elsewhere to induce third parties, including LG's retail partners, customers, and/or end users, to sell, offer to sell, and/or use the Accused Product in a manner that would infringe one or more claims of the '644 Patent, including but not limited to at least Claim 1. *See, e.g.*, https://www.lg.com/us/tvs/lg-55ua7700pub-4k-uhd-tv.

157.    On information and belief, LG furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Products, including the LG 55-inch UHD television (Part No. 55UA7700PUB), to induce third parties, including LG's retail partners, customers, and/or end users, to offer to sell, sell, and/or use the Accused Products in a manner that would infringe one or more claims of the '644 Patent, including but not limited to at least Claim 1. *See, e.g.*, https://www.lg.com/us/support/product/lg-55UA7700PUB.AUSQ.

158. Despite LG's knowledge of the '644 Patent and LG's infringement of the '644 Patent, LG has continued to induce third parties, including LG's retail partners, customers, and/or end users of the Accused Products, including the LG 55-inch UHD television (Part No. 55UA7700PUB), to infringe one or more claims of the '644 Patent, including but not limited to at least Claim 1, with the specific intent to cause infringement. LG knew or should have known that those acts would induce actual infringement by third parties, including LG's retail partners, customers, and/or end users, of one or more claims of the '644 Patent, including but not limited to at least Claim 1.

159. LG has therefore induced infringement by others of one or more claims of the '644 Patent, including but not limited to at least Claim 1, with the specific intent to induce acts that constitute infringement of the '644 Patent and with knowledge that such acts infringe one or more claims of the '644 Patent, including but not limited to at least Claim 1.

160. LG is and has been infringing one or more claims of the '644 Patent, including at but not limited to least Claim 1, by contributing to infringement by third parties, including for example LG's retail partners, customers, and/or end users of the LG 55-inch UHD television (Part No. 55UA7700PUB), within this District and throughout the United States. Direct infringement by LG's retail partners, customers, and end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG 55-inch UHD television (Part No. 55UA7700PUB). The LCD monitors and televisions supplied by LG are especially made or especially adapted to practice the inventions claimed in the '644 Patent, including but not limited to at least Claim 1, and (i) are a material part of the inventions claimed in the '644 Patent and (ii) are not staple articles or commodities of commerce suitable for substantial non-infringing use at least because they are specifically designed to use the inventions claimed in the '644 Patent. Any other use of such LCD

monitors and televisions would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

161.   LG has therefore contributed to the infringement by others of one or more claims of the '644 Patent, including but not limited to at least Claim 1.

162.   LG's infringement of one or more claims of the '644 Patent, including but not limited to at least Claim 1, has been, and continues to be, willful. As explained above, at least as of the filing of this Complaint, LG has actual knowledge of the '644 Patent and LG's infringement of the '644 Patent. Despite that knowledge, LG did not and has not ceased its infringing activities. LG has continued to infringe one or more claims of the '644 Patent, including but not limited to at least Claim 1, in disregard of Lonestar's patent rights. As a result, LG deliberately and intentionally infringed the '644 Patent, and continues to do so, after receiving express and actual knowledge of both the '644 Patent and its infringement thereof.

163.   LG's infringement of the '644 Patent, including but not limited to at least Claim 1, has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling Lonestar to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNT IV: INFRINGEMENT OF THE '435 PATENT

164.   Lonestar incorporates by reference the preceding paragraphs as though fully set forth herein.

165.   LG is and has been directly infringing one or more claims of the '435 Patent, including but not limited to at least Claim 14, either literally and/or under the doctrine of

equivalents, by making, using, offering for sale, and/or selling within the United States, and/or by importing into the United States, without authority, at least one of the Accused Products.

166. For example, exemplary Claim 14 of the '435 Patent is directed to:

14. A method of manufacturing a display panel, the method comprising:

providing a gate pattern comprising a gate line, a high storage line and a low storage line on a substrate;

providing a first insulation layer on the substrate, on which the gate pattern is provided;

providing a data pattern comprising a first data line and a second data line on the first insulation layer;

providing a second insulation layer on the first insulation layer, on which the data pattern is provided; and

providing a high pixel electrode, a low pixel electrode and a connecting electrode, which connects the high storage line and the low storage line, on the second insulation layer.

167. The Accused Products, including at least the LG 86-inch QNED television (Part No. 86QNED85TUA), practice each element and/or are made according to at least, but not limited to, the method of Claim 14 of the '435 Patent.

168. The Accused Products perform and/or are made according to a method of manufacturing a display panel. For example, the LG 86-inch QNED television (Part No. 86QNED85TUA) includes an LCD panel.

169. The method of manufacturing the Accused Products includes providing a gate pattern comprising a gate line, a high storage line and a low storage line on a substrate. For example, the LG 86-inch QNED television (Part No. 86QNED85TUA) includes a gate pattern with a gate line, a high storage line, and a low storage line on a substrate, such as a TFT substrate.

170.    The method of manufacturing the Accused Products includes providing a first insulation layer on the substrate, on which the gate pattern is provided. For example, the LG 86-inch QNED television (Part No. 86QNED85TUA) includes an insulation layer on the substrate on which the gate pattern is provided.

171.    The method of manufacturing the Accused Products includes providing a data pattern comprising a first data line and a second data line on the first insulation layer. For example, the LG 86-inch QNED television (Part No. 86QNED85TUA) includes a data pattern with a first and second data line on the first insulation layer.

172.    The method of manufacturing the Accused Products includes providing a second insulation layer on the first insulation layer, on which the data pattern is provided. For example, the LG 86-inch QNED television (Part No. 86QNED85TUA) includes a second insulation layer on the first insulation layer (the insulation layer that includes the first and second data lines).

173.    The method of manufacturing the Accused Products includes providing a high pixel electrode, a low pixel electrode and a connecting electrode, which connects the high storage line and the low storage line, on the second insulation layer. For example, the LG 86-inch QNED television (Part No. 86QNED85TUA) includes high and low pixel electrodes and a connecting electrode that connects the high and low storage lines on the second insulation layer.

174.    LG has actual knowledge of the '435 Patent, and their infringement of the '435 Patent, at least as of the date of filing of this Complaint.

175.    LG is and has been infringing one or more claims of the '435 Patent, including but not limited to at least Claim 14, by inducing third parties to infringe, including for example LG's retail partners, customers, and/or end users of the Accused Products, within this District and throughout the United States. For example, on information and belief, at least the LG 86-inch

QNED television (Part No. 86QNED85TUA) has been and is being sold, offered for sale, and/or used by LG's retail partners, customers, and/or end users. Direct infringement by LG's retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG 86-inch QNED television (Part No. 86QNED85TUA).

176. On information and belief, LG supplies LCD monitors and televisions that are especially made or especially adapted to practice the inventions claimed in the '435 Patent, including but not limited to at least Claim 14, to induce third parties, including for example LG's retail partners, customers, and/or end users of the Accused Products, to use, offer for sale, and/or sell the Accused Products in a manner that would infringe one or more claims of the '435 Patent, including but not limited to at least Claim 14.

177. On information and belief, LG markets, advertises, and lists sales information such as price, special offers, and inventory information for the Accused Products, including the LG 86-inch QNED television (Part No. 86QNED85TUA), on its website and elsewhere to induce third parties, including LG's retail partners, customers, and/or end users, to sell, offer to sell, and/or use the Accused Product in a manner that would infringe one or more claims of the '435 Patent, including but not limited to at least Claim 14. *See, e.g.*, https://www.lg.com/us/tvs/lg-86qned85tua-qned-4k-tv.

178. On information and belief, LG furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Products, including the LG 86-inch QNED television (Part No. 86QNED85TUA), to induce third parties, including LG's retail partners, customers, and/or end users, to offer to sell, sell, and/or use the Accused Products in a manner that would infringe one or more claims of the '435 Patent, including but not limited to at least Claim 14. *See, e.g.*, https://www.lg.com/us/support/product/lg-86QNED85TUA.AUS.

179.    Despite LG's knowledge of the '435 Patent and LG's infringement of the '435 Patent, LG has continued to induce third parties, including LG's retail partners, customers, and/or end users of the Accused Products, including the LG 86-inch QNED television (Part No. 86QNED85TUA), to infringe one or more claims of the '435 Patent, including but not limited to at least Claim 14, with the specific intent to cause infringement. LG knew or should have known that those acts would induce actual infringement by third parties, including LG's retail partners, customers, and/or end users, of one or more claims of the '435 Patent, including but not limited to at least Claim 14.

180.    LG has therefore induced infringement by others of one or more claims of the '435 Patent, including but not limited to at least Claim 14, with the specific intent to induce acts that constitute infringement of the '435 Patent and with knowledge that such acts infringe one or more claims of the '435 Patent, including but not limited to at least Claim 14.

181.    LG is and has been infringing one or more claims of the '435 Patent, including but not limited to at least Claim 14, by contributing to infringement by third parties, including for example LG's retail partners, customers, and/or end users of the Accused Products, including the LG 86-inch QNED television (Part No. 86QNED85TUA), within this District and throughout the United States. Direct infringement by LG's retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including at least the LG 86-inch QNED television (Part No. 86QNED85TUA). The LCD monitors and televisions supplied by LG are especially made or especially adapted to use the inventions claimed in the '435 Patent, including but not limited to at least Claim 1, and (i) are a material part of the inventions claimed in the '435 Patent and (ii) are not staple articles or commodities of commerce suitable for substantial non-infringing use at least because they are specifically designed to use the inventions

claimed in the '435 Patent. Any other use of such LCD monitors and televisions would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

182.   LG has therefore contributed to the infringement by others of one or more claims of the '435 Patent, including but not limited to at least Claim 14.

183.   LG's infringement of one or more claims of the '435 Patent, including but not limited to at least Claim 14, has been, and continues to be, willful. As explained above, at least as of the filing of this Complaint, LG has actual knowledge of the '435 Patent and LG's infringement of the '435 Patent. Despite that knowledge, LG did not and has not ceased its infringing activities. LG has continued to infringe one or more claims of the '435 Patent, including but not limited to at least Claim 14, in disregard of Lonestar's patent rights. As a result, LG deliberately and intentionally infringed the '435 Patent, and continues to do so, after receiving express and actual knowledge of both the '435 Patent and its infringement thereof.

184.   LG's infringement of the '435 Patent, including but not limited to at least Claim 14, has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling Lonestar to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

### COUNT V: INFRINGEMENT OF THE '612 PATENT

185.   Lonestar incorporates by reference the preceding paragraphs as though fully set forth herein.

186.   LG is and has been directly infringing one or more claims of the '612 Patent, including but not limited to at least Claim 11, either literally and/or under the doctrine of

equivalents, by making, using, offering for sale, and/or selling within the United States, and/or by importing into the United States, without authority, at least one of the Accused Products.

187.   For example, exemplary Claim 11 of the '612 Patent is directed to:

11. A liquid crystal display, comprising:

a first substrate;

a second substrate facing the first substrate;

a liquid crystal layer disposed between the first substrate and the second substrate;

a first electrode on the first substrate; and

a second electrode on the first substrate and comprising a plurality of branch electrodes overlapped with the first electrode,

wherein liquid crystal molecules in the liquid crystal layer are configured to be aligned in a first direction for at least a determined period of time,

wherein the second electrode further comprises a connection part to connect ends of the plurality of branch electrodes,

wherein a length of a portion of a slit in the first direction, the portion of the slit extending substantially in a uniform direction, is at least about 40 $\mu$m, the slit being formed between two of the plurality of branch electrodes, and

wherein a value equivalent to multiplying a width of the connection part measured along the first direction by the length of the slit is at least about 90.

188.   The Accused Products, including at least the LG 27-inch QHD IPS monitor (Part No. 27U631A-B), practice each element of at least, but not limited to, Claim 11 of the '612 Patent.

189.   The Accused Products include a liquid crystal display. For example, the LG 27-inch QHD IPS monitor (Part No. 27U631A-B) includes a 27-inch LCD.

190.    The LCD in the Accused Products includes a first substrate. For example, the LCD in the LG 27-inch QHD IPS monitor (Part No. 27U631A-B) includes a substrate, such as a TFT substrate.

191.    The LCD in the Accused Products includes a second substrate facing the first substrate. For example, the LCD in the LG 27-inch QHD IPS monitor (Part No. 27U631A-B) includes a second substrate facing the first substrate, such as a CF substrate.

192.    The LCD in the Accused Products includes a liquid crystal layer disposed between the first substrate and the second substrate. For example, the LCD in the LG 27-inch QHD IPS monitor (Part No. 27U631A-B) includes a liquid crystal layer between the first and second substrates.

193.    The LCD in the Accused Products includes a first electrode on the first substrate. For example, the LCD in the LG 27-inch QHD IPS monitor (Part No. 27U631A-B) includes a first electrode on the first substrate.

194.    The LCD in the Accused Products includes a second electrode on the first substrate and comprising a plurality of branch electrodes overlapped with the first electrode. For example, the LCD in the LG 27-inch QHD IPS monitor (Part No. 27U631A-B) includes a second electrode on the first substrate with a plurality of branch electrodes overlapped with the first electrode.

195.    The liquid crystal molecules in the liquid crystal layer of the LCD in the Accused Products are configured to be aligned in a first direction for at least a determined period of time. For example, the liquid crystal molecules in the liquid crystal layer of the LCD in the LG 27-inch QHD IPS monitor (Part No. 27U631A-B) are configured to be aligned in a first direction for at least a determined period of time.

196. In the LCD in the Accused Products, the second electrode further comprises a connection part to connect ends of the plurality of branch electrodes. For example, the LCD in the LG 27-inch QHD IPS monitor (Part No. 27U631A-B) includes a second electrode with a connection part to connect ends of the plurality of branch electrodes.

197. In the LCD in the Accused Products, a length of a portion of a slit in the first direction, the portion of the slit extending substantially in a uniform direction, is at least about 40 μm, the slit being formed between two of the plurality of branch electrodes. For example, in the LCD in the LG 27-inch QHD IPS monitor (Part No. 27U631A-B), a length of a portion of a slit in the first direction, the portion of the slit extending substantially in a uniform direction, is at least about 40 μm, the slit being formed between two of the plurality of branch electrodes.

198. In the LCD in the Accused Products, a value equivalent to multiplying a width of the connection part measured along the first direction by the length of the slit is at least about 90. For example, in the LCD in the LG 27-inch QHD IPS monitor (Part No. 27U631A-B), value equivalent to multiplying a width of the connection part measured along the first direction by the length of the slit is at least about 90.

199. LG has had actual knowledge of the '612 Patent, and their infringement of the '612 Patent, at least as of the date of filing of this Complaint.

200. LG is and has been infringing one or more claims of the '612 Patent, including but not limited to at least Claim 11, by inducing third parties to infringe, including for example LG's retail partners, customers, and/or end users of the Accused Products, within this District and throughout the United States. For example, on information and belief, at least the LG 27-inch QHD IPS monitor (Part No. 27U631A-B) has been and is being sold, offered for sale, and/or used by LG's retail partners, customers, and/or end users. Direct infringement by LG's retail partners,

customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG 27-inch QHD IPS monitor (Part No. 27U631A-B).

201.   On information and belief, LG supplies LCD monitors and televisions that are especially made or especially adapted to practice the inventions claimed in the '612 Patent, including but not limited to at least Claim 11, to induce third parties, including for example LG's retail partners, customers, and/or end users of the Accused Products, to use, offer for sale, and/or sell the Accused Products in a manner that would infringe one or more claims of the '612 Patent, including but not limited to at least Claim 11.

202.   On information and belief, LG markets, advertises, and lists sales information such as price, special offers, and inventory information for the Accused Products, including the LG 27-inch QHD IPS monitor (Part No. 27U631A-B), on its website and elsewhere to induce third parties, including LG's retail partners, customers, and/or end users, to sell, offer to sell, and/or use the Accused Product in a manner that would infringe one or more claims of the '612 Patent, including but not limited to at least Claim 11. *See, e.g.*, https://www.lg.com/us/monitors/lg-27u631a-b-qhd-monitor.

203.   On information and belief, LG furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Products, including the LG 27-inch QHD IPS monitor (Part No. 27U631A-B), to induce third parties, including LG's retail partners, customers, and/or end users, to offer to sell, sell, and/or use the Accused Products in a manner that would infringe one or more claims of the '612 Patent, including but not limited to at least Claim 11. *See, e.g.*, https://www.lg.com/us/support/product/lg-27U631A-B.AUSQ.

204.   Despite LG's knowledge of the '612 Patent and LG's infringement of the '612 Patent, LG has continued to induce third parties, including LG's retail partners, customers, and/or

end users of the Accused Products, including the LG 27-inch QHD IPS monitor (Part No. 27U631A-B), to infringe one or more claims of the '612 Patent, including but not limited to at least Claim 11, with the specific intent to cause infringement. LG knew or should have known that those acts would induce actual infringement by third parties, including LG's retail partners, customers, and/or end users, of one or more claims of the '612 Patent, including but not limited to at least Claim 11.

205.   LG has therefore induced infringement by others of one or more claims of the '612 Patent, including but not limited to at least Claim 11, with the specific intent to induce acts that constitute infringement of the '612 Patent and with knowledge that such acts infringe one or more claims of the '612 Patent, including but not limited to at least Claim 11.

206.   LG is and has been infringing one or more claims of the '612 Patent, including but not limited to at least Claim 11, by contributing to infringement by third parties, including for example LG's retail partners, customers, and/or end users of the Accused Products, including the LG 27-inch QHD IPS monitor (Part No. 27U631A-B), within this District and throughout the United States. Direct infringement by LG's retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG 27-inch QHD IPS monitor (Part No. 27U631A-B). The LCD monitors and televisions supplied by LG are especially made or especially adapted to practice the inventions claimed in the '612 Patent, including but not limited to at least Claim 11, and (i) are a material part of the inventions claimed in the '612 Patent and (ii) are not staple articles or commodities of commerce suitable for substantial non-infringing use at least because they are specifically designed to use the inventions claimed in the '612 Patent. Any other use of such LCD monitors and televisions would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

207.    LG has therefore contributed to the infringement by others of one or more claims of the '612 Patent, including but not limited to at least Claim 11.

208.    LG's infringement of one or more claims of the '612 Patent, including but not limited to at least Claim 11, has been, and continues to be, willful. As explained above, at least as of the filing of this Complaint, LG has actual knowledge of the '612 Patent and LG's infringement of the '612 Patent. Despite that knowledge, LG did not and has not ceased its infringing activities. LG has continued to infringe one or more claims of the '612 Patent, including but not limited to at least Claim 11, in disregard of Lonestar's patent rights. As a result, LG deliberately and intentionally infringed the '612 Patent, and continues to do so, after receiving express and actual knowledge of both the '612 Patent and its infringement thereof.

209.    LG's infringement of the '612 Patent, including but not limited to at least Claim 11, has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling Lonestar to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNT VI: INFRINGEMENT OF THE '480 PATENT

210.    Lonestar incorporates by reference the preceding paragraphs as though fully set forth herein.

211.    LG is and has been directly infringing one or more claims of the '480 Patent, including but not limited to at least Claim 1, either literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling within the United States, and/or by importing into the United States, without authority, at least one of the Accused Products.

212.    For example, exemplary Claim 1 of the '480 Patent is directed to:

1. A display device comprising:

a first gate line and a data line which intersect each other;

a pixel electrode;

a switching element comprising a gate electrode connected to the first gate line, a source electrode connected to the data line, a drain electrode connected to the pixel electrode; and

a connecting portion which connects the drain electrode with the pixel electrode,

wherein a distance between the data line and the connecting portion is less than a distance between the data line and the gate electrode in a first direction perpendicular to the data line in a plan view.

213.    The Accused Products, including at least the LG 86-inch QNED television (Part No. 86QNED85TUA), practice each element of at least, but not limited to, Claim 1 of the '480 Patent.

214.    The Accused Products include a display device. For example, the LG 86-inch QNED television (Part No. 86QNED85TUA) includes an 86-inch LCD.

215.    The display device of the Accused Products includes a first gate line and a data line which intersect each other. For example, the display device of the LG 86-inch QNED television (Part No. 86QNED85TUA) includes a first gate line and a data line that intersect.

216.    The display device of the Accused Products includes a pixel electrode. For example, the display device of the LG 86-inch QNED television (Part No. 86QNED85TUA) includes a pixel electrode.

217.    The display device of the Accused Products includes a switching element comprising a gate electrode connected to the first gate line, a source electrode connected to the data line, a drain electrode connected to the pixel electrode. For example, the display device of the

- 51 -

LG 86-inch QNED television (Part No. 86QNED85TUA) includes a switching element with a gate electrode connected to the first gate line, a source electrode connected to the data line, and a drain electrode connected to the pixel electrode.

218.    The display device of the Accused Products includes a connecting portion which connects the drain electrode with the pixel electrode. For example, the display device of the LG 86-inch QNED television (Part No. 86QNED85TUA) includes a connecting portion that connects the drain electrode with the pixel electrode.

219.    In the display device of the Accused Products, a distance between the data line and the connecting portion is less than a distance between the data line and the gate electrode in a first direction perpendicular to the data line in a plan view. For example, in the display device of the LG 86-inch QNED television (Part No. 86QNED85TUA), a distance between the data line and the connecting portion is less than a distance between the data line and the gate electrode in a first direction perpendicular to the data line in a plan view.

220.    LG has had actual knowledge of the '480 Patent, and their infringement of the '480 Patent, at least as of the date of filing of this Complaint.

221.    LG is and has been infringing one or more claims of the '480 Patent, including but not limited to at least Claim 1, by inducing third parties to infringe, including for example LG's retail partners, customers, and/or end users of the Accused Products, within this District and throughout the United States. For example, on information and belief, at least the LG 86-inch QNED television (Part No. 86QNED85TUA) has been and is being sold, offered for sale, and/or used by LG's retail partners, customers, and/or end users. Direct infringement by LG's retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG 86-inch QNED television (Part No. 86QNED85TUA).

222.    On information and belief, LG supplies LCD monitors and televisions that are especially made or especially adapted to practice the inventions claimed in the '480 Patent, including but not limited to at least Claim 1, to induce third parties, including for example LG's retail partners, customers, and/or end users of the Accused Products, to use, offer for sale, and/or sell the Accused Products in a manner that would infringe one or more claims of the '480 Patent, including but not limited to at least Claim 1.

223.    On information and belief, LG markets, advertises, and lists sales information such as price, special offers, and inventory information for the Accused Products, including the LG 86-inch QNED television (Part No. 86QNED85TUA), on its website and elsewhere to induce third parties, including LG's retail partners, customers, and/or end users, to sell, offer to sell, and/or use the Accused Product in a manner that would infringe one or more claims of the '480 Patent, including but not limited to at least Claim 1. *See, e.g.*, https://www.lg.com/us/tvs/lg-86qned85tua-qned-4k-tv.

224.    On information and belief, LG furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Products, including the LG 86-inch QNED television (Part No. 86QNED85TUA), to induce third parties, including LG's retail partners, customers, and/or end users, to offer to sell, sell, and/or use the Accused Products in a manner that would infringe one or more claims of the '480 Patent, including but not limited to at least Claim 1. *See, e.g.*, https://www.lg.com/us/support/product/lg-86QNED85TUA.AUS.

225.    Despite LG's knowledge of the '480 Patent and LG's infringement of the '480 Patent, LG has continued to induce third parties, including LG's retail partners, customers, and/or end users of the Accused Products, including the LG 86-inch QNED television (Part No. 86QNED85TUA), to infringe one or more claims of the '480 Patent, including but not limited

to at least Claim 1, with the specific intent to cause infringement. LG knew or should have known that those acts would induce actual infringement by third parties, including LG's retail partners, customers, and/or end users, of one or more claims of the '480 Patent, including but not limited to at least Claim 1.

226.    LG has therefore induced infringement by others of one or more claims of the '480 Patent, including but not limited to at least Claim 1, with the specific intent to induce acts that constitute infringement of the '480 Patent and with knowledge that such acts infringe one or more claims of the '480 Patent, including but not limited to at least Claim 1.

227.    LG is and has been infringing one or more claims of the '480 Patent, including but not limited to at least Claim 1, by contributing to infringement by third parties, including for example LG's retail partners, customers, and/or end users of the Accused Products, including the LG 86-inch QNED television (Part No. 86QNED85TUA), within this District and throughout the United States. Direct infringement by LG's retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG 86-inch QNED television (Part No. 86QNED85TUA). The LCD monitors and televisions supplied by LG are especially made or especially adapted to practice the inventions claimed in the '480 Patent, including but not limited to at least Claim 1, and (i) are a material part of the inventions claimed in the '480 Patent and (ii) are not staple articles or commodities of commerce suitable for substantial non-infringing use at least because they are specifically designed to use the inventions claimed in the '480 Patent. Any other use of such LCD monitors and televisions would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

228.    LG has therefore contributed to the infringement by others of one or more claims of the '480 Patent, including but not limited to at least Claim 1.

229.    LG's infringement of one or more claims of the '480 Patent, including but not limited to at least Claim 1, has been, and continues to be, willful. As explained above, at least as of the filing of this Complaint, LG has actual knowledge of the '480 Patent and LG's infringement of the '480 Patent. Despite that knowledge, LG did not and has not ceased its infringing activities. LG has continued to infringe one or more claims of the '480 Patent, including but not limited to at least Claim 1, in disregard of Lonestar's patent rights. As a result, LG deliberately and intentionally infringed the '480 Patent, and continues to do so, after receiving express and actual knowledge of both the '480 Patent and its infringement thereof.

230.    LG's infringement of the '480 Patent, including but not limited to at least Claim 1, has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling Lonestar to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## DAMAGES

231.    Defendants' acts of infringement have caused damages to Lonestar, and Lonestar is entitled to recover from Defendants the damages it has sustained as a result of Defendants' wrongful acts in an amount to be determined at trial.

232.    Lonestar is entitled, and now seeks, to recover damages in an amount not less than the maximum amount permitted by law, including for damages arising before the filing of this Complaint.

233.    As a result of Defendants' acts of infringement, Lonestar has suffered actual and consequential damages. To the fullest extent permitted by law, Lonestar seeks recovery of damages

in an amount adequate to compensate for Defendants' infringement. Lonestar further seeks any other damages to which it would be entitled in law or in equity.

## INJUNCTIVE RELIEF

234.    LG's acts of infringement have caused—and unless restrained and enjoined, LG's acts of infringement will continue to cause—irreparable injury and damage to Lonestar for which Lonestar has no adequate remedy at law. Unless enjoined by this Court, LG will continue to infringe the claims of the Asserted Patents.

## ATTORNEYS' FEES

235.    Lonestar is entitled to recover reasonable and necessary attorneys' fees under applicable law.

## DEMAND FOR JURY TRIAL

236.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Lonestar demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Lonestar prays for judgment and requests that the Court find in its favor and against Defendants. Lonestar respectfully requests that the Court enter preliminary and final orders, declarations, and judgments against Defendants as are necessary to provide Lonestar with the following relief:

a.    A judgment that Defendants' have infringed and/or are infringing one or more claims of the Asserted Patents, literally or under the doctrine of equivalents, directly and indirectly, as alleged above;

b.    A judgment that Defendants' infringement of one or more claims of the Asserted Patents has been willful;

c.    An award for all damages and costs arising out of Defendants' infringement, to adequately compensate Lonestar for Defendants' infringement of the Asserted Patents, but in no event less than a reasonable royalty, including an accounting of damages up to any verdict as well as supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed;

d.    Pre-judgment and post-judgment interest, jointly and severally, in an amount according to proof;

e.    Treble damages based on Defendants' willful infringement;

f.    An accounting of damages and any future compensation due to Lonestar for Defendants' infringement (past, present, or future) not specifically accounted for in a damages (or other relief), and/or permanent injunctive relief;

g.    A judgment that this case is exceptional, and an award of reasonable attorneys' fees as provided by 35 U.S.C. § 285 and enhanced damages as provided by 35 U.S.C. § 284;

h.    An award of costs of suit; and

i.    All further relief in law or in equity as the Court may deem just and proper.

Dated: May 15, 2026                          Respectfully submitted,

                                             /s/ Michael D. Karson
                                             **Jamie H. McDole**
                                               State Bar No. 24082049
                                               Lead Counsel
                                             **Michael D. Karson**
                                               State Bar No. 24090198
                                             **Matthew W. Cornelia**
                                               State Bar No. 24097534
                                             **Ryan Short**
                                               State Bar No. 24138416
                                             **WINSTEAD PC**
                                             2728 N. Harwood Street, Suite 500
                                             Dallas, Texas 75201
                                             Tel.: (214) 745-5400
                                             Fax: (214) 745-5390
                                             Email: jmcdole@winstead.com
                                                     mkarson@winstead.com
                                                     mcornelia@winstead.com
                                                     rshort@winstead.com

                                             *Attorneys for Plaintiff*
                                             *Lonestar Crystal Display LLC*